# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In Re George Robert Walker and Sherry Denise Walker,       18-04406-hb

-------------------------------------------------------------------------------------------------------

George Robert Walker and
Sherry Denise Walker,

                                                                                          18-ap-80075-hb

      Plaintiffs,

v.

Upright Law, Law Solutions Chicago, LLC and
Law Solutions Chicago, LLC,

      Defendants,

## DEFENDANT'S SUBMISSION IN RESPONSE TO THE BANKRUPTCY COURT'S FEBRUARY 20, 2020 ORDER

Defendant Deighan Law LLC, f/k/a Law Solutions Chicago LLC, doing business as

UpRight Law LLC ("UpRight Law" or "Defendant") hereby files this response to the Court's

February 20, 2020 Order (the "Order").  Although the Court denied the Walkers' request for an

award of sanctions for their benefit against UpRight Law (the only remaining claim in their

Adversary Complaint), the Court's Order requires UpRight Law to respond to a series of legal

and factual issues that were not at issue in the Adversary Complaint.  Specifically, the Order

requires UpRight Law to do the following:

> [P]ursuant to §105(a), on our before April 10, 2020, UpRight shall: review
> Section I(D) (Conclusions 1-11) herein an file a Response detailing any dispute
> with those findings; and review Local Civ. Rule 83.I.08 (D.S.C.), RDE Rule IV
> (B); 11 U.S.C. §§ 329, 526, 527, and 528; Fed. R. Bank. P. 2017 and 9011; Rule
> 1.4 RPC, Rule 407 SCACR (Communication), 1.5 (Fees), 1.7 (Conflict of
> Interest: Current Clients), 1.9 (Duties to Former Clients), 1.10 (Imputation of
> Conflicts of Interest: General Rule), 1.16 (Declining or Terminating
> Representation), 5.1 (Responsibilities of Partners, Managers, and Supervisory
> Lawyers), 5.3 (Responsibilities Regarding Non Lawyer Assistance), and 5.5
> (Unauthorized Practice of Law; Multijurisdictional Practice of Law), and detail

any arguments to support the compatibility of the findings in Section 1(D) with those authorities.

(Doc. 76 at 22). The Order thus requires UpRight Law to detail arguments that "support the compatibility of" the Court's findings/conclusions in Section 1-11(D) with a list of nine different rules of Professional Conduct, four different bankruptcy statutes, and two Rules of Federal Bankruptcy Procedure, none of which were alleged in the Walkers' Adversary Complaint. The Order further states that "any further action, if found to be appropriate after a review of the Response, may include monetary and non-monetary sanctions, and/or referral of any matters to South Carolina Office of Disciplinary Counsel and/or the U.S. District Court pursuant to Local Civ. Rule 83.I.08 (D.S.C.), Rule V." (*Id*. at 22-23).

This submission responds to that aspect of the Court's February 20, 2020 Order, and has two parts. Part I states UpRight Law's procedural objections to the Order. In Part II, UpRight Law has attempted (to the extent possible) to address the substance of Paragraphs 1-11(D) included in the Order.[1] As explained below, on the merits, there is no basis to impose sanctions on UpRight Law. Accordingly, the Court should – for both procedural and substantive reasons – decline to impose sanctions on UpRight Law.

## I.      PART ONE

The Order, to the extent that it requires UpRight Law to respond to the series of issues set forth at page 22, is procedurally improper for numerous reasons. These objections include the following:

(A) The Order violates UpRight Law's due process rights in numerous respects (including lack of adequate notice, deprivation of rights to which defendants are

---

[1] Pursuant to the Order's directive, UpRight Law has undertaken a review of Paragraphs 1-11(D). It has not addressed other findings in the Order, but reserves its right to do so after the entry of judgment.

entitled in an adversary proceeding, and violation of procedural rules relating to attorney discipline in District Court Rule 83.I.08).

(B)  The Order purports to invoke 11 U.S.C. § 105 in the absence of a determination of bad faith, and in a manner that ignores existing procedural rules that is contrary to the teachings of *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) (§105 does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code and is subordinate to other valid statutory directives and prohibitions).

(C)  The Order contemplates unspecified criminal sanctions in the absence of adequate procedures, thereby ignoring controlling Fourth Circuit authority. *See, e.g., Bradley v. American Household Inc.*, 378 F.3d 373 (4th Cir. 2004). It also threatens to impose sanctions or liability in a manner that is inconsistent with the terms of the settlement agreement between the Walkers and UpRight Law. *See id*.

(D)  The Order contemplates adjudication of issues/claims that are moot and appears to contemplate the issuance of advisory opinions.

(E)  The Order invokes Rule 9011 of the Federal Rules of Bankruptcy Procedure, but does not follow its requirements, and does not appear to have any conceivable relevance to the paragraphs 1-11(D).

Each of these reasons is addressed below.

**A.  The Order violates UpRight Law's due process rights in numerous ways.**

The Order violates UpRight Law's due process rights because it: (1) threatens to impose sanctions in the absence of adequate notice concerning the basis for sanctions; (2) denies UpRight Law rights afforded to a defendant in an adversary proceeding; and (3) violates District Court Rule 83.I.08 by ignoring mandatory procedures for the initiation of disciplinary proceedings and the imposition of attorney discipline.

**1.  The Order fails to provide UpRight Law with adequate notice.**

For more than a century "the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale*, 1 Wall. 223, 233 (1863)) (also citing *Windsor v. McVeigh*, 93 U.S. 274 (1876); *Hovey v. Elliott*, 167 U.S. 409 (1897); *Grannis v. Ordean*, 234 U.S. 385 (1914)).    The

fundamental requirement of due process "is the opportunity to be heard 'at a *meaningful time* and in a *meaningful manner*.'" *Mathews v Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) (also citing *Grannis*, 234 U.S. at 394) (emphasis added); *see also Crowe v. Smith*, 151 F.3d 217, 230-31 (5th Cir. 1998) (following *Mathews v. Eldridge*).

Moreover, when a court proposes to sanction a lawyer, that lawyer must receive not only "specific notice of the conduct alleged to be sanctionable" but also "*the standard by which that conduct will be assessed*, and *an opportunity to be heard on that matter.*" *Mickle v. Morin*, 297 F.3d 114, 126 (2d Cir. 2002) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91 (2d Cir. 1997)) (emphasis added); *see also United States v. Melot*, 768 F.3d 1082, 1085 (10th Cir. 2014) ("Sanctions cannot be assessed without the 'basic requirements of due process,' which are 'notice that such sanctions are being considered by the court and a *subsequent opportunity* to respond.'") (quoting *Braley v. Campbell*, 832 F.2d 1504, 1514 (10th Cir. 1987) (en banc)) (emphasis added).

An "attorney 'must be forewarned of the authority under which sanctions are being considered and *given a chance to defend himself against specific charges*.'" *Mickle*, 297 F.3d at 126 (quoting *Ted Lapidus*, 112 F.3d at 97) (emphasis added); *see also Crooked Creek Props. v. Ensley*, 380 F. App'x 914, 917 (11th Cir. 2010) ("It is established by the decisions in this and in Federal jurisdictions that due process of law means notice, *a hearing according to that notice*, and a judgment entered in accordance with such notice and hearing.") (citation omitted) (emphasis added); *Schlaifer Nance & Co v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 2000) (citations omitted) ("At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense."); *Collier v. Washington*, 551 B.R. 249, 255 (W.D. La. 2016) (reversing a bankruptcy court's sanctions because court failed to "g[i]ve notice of its intent to impose a sanction under § 526(c)(5)(B) *prior to the hearing*") (citing cases) (emphasis added).

The Order violates UpRight Law's due process right to *meaningful* notice and a *meaningful* opportunity to be heard in at least three respects. First, *after* conclusion of the trial in

the Adversary Proceeding in which UpRight Law prevailed, the Bankruptcy Court raised new factual and legal issues and new potential relief.  But these were not at issue in the Walkers' case.  For example, the Order identifies four bankruptcy code sections and nine Rules of Professional Conduct that were not alleged and were not at issue in the Adversary Complaint.  Raising these issues for the first time after the conclusion of the trial does not comport with due process because UpRight Law was not on notice that the Bankruptcy Court intended to consider these issues.[2]  *See, e.g. In re Tribune Media Co.*, 2019 WL 643734, *4 (D. Del. Feb. 15, 2019) ("Abundant opportunity to be heard matters very little when one does not know what needs to be talked about.").  Introducing these new issues after the fact impaired UpRight Law's ability to establish a complete evidentiary record relating to these new issues.

Second, the Order merely lists four bankruptcy statutes,[3] nine Rules of Professional conduct, and two rules of bankruptcy procedure and instructs UpRight Law to make arguments "to support the compatibility of the findings in Section I(D) (Conclusions 1-11) with those authorities."  (Doc. 76 at 22).   It does not explain *how* UpRight is alleged to have violated the various provisions that have now been now placed at issue.  In the context of litigation pleadings, courts have found reasonable notice to be lacking from complaints that do not make clear which allegations of fact apply to which claims for relief.  *See, e.g., In re SCANA Corp. Sec. Lit.*, No. 17-2616-MBS, 2019 WL 1427443, *5 (D.S.C. Mar. 29, 2019)  (Rule 8(a)(2) prohibits complaints that make it "'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'") (quoting *SunTrust Mortg., Inc. v. First Residential Mortg. Servs. Corp.*, Civil Action No. 3:12CV162, 2012 WL 7062086, *7 (E.D. Va. 2012) (citing cases)); *see*

---

[2] Paragraphs 1-11(D) of the Order do not pertain to the conduct of the lawyers who represented UpRight Law in this adversary proceeding, Todd Darwin and Mark Lavery.  Nor do they relate to UpRight Law's conduct as a defendant in the adversary proceeding.  Rather, the Order generally raises issues about UpRight Law's representation of the Walkers.

[3] As just one example, the Order lists 11 U.S.C. § 526, which was not alleged in the adversary complaint. It apparently expects UpRight Law to consider how that statute (which contains a number of different prohibitions) relates to the Court's findings in 1-11(D), and then offer arguments against allegations that have never been stated. This does not constitute fair notice and does not comport with due process.

*also McLean Contracting Co. v. Waterman Steamship Corp.*, 277 F.3d 477, 480 (4th Cir. 2002)

("'[t]he use of shotgun pleadings in civil cases is a ubiquitous problem,' making it 'particularly

important for district courts to undertake the difficult, *but essential, task of attempting to narrow

and define the issues before trial*'") *quoting Morrow v. City of Birmingham*, 117 F.3d 508, 515

(11th Circuit 1997) (emphasis added); *Hand v. ABN AMRO Mortg. Group, Inc.*, 2013 WL

6383128, *4 (S.D. Ga. Dec. 5, 2013), *quoting Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d

955, 979-980 (11th Cir.2008) (a complaint containing "untold causes of action, all bunched

together in one count" is contrary to Fed. R. Civ. P. 10(b)).

The Order contains a similar lack of notice, as it merely lists a series of authorities and

instructs UpRight Law to apply them to its findings in Paragraphs 1-11(D).  It is unclear which

authorities are intended to apply to which paragraphs or in what manner the Court believes that

the findings in these paragraphs violate these authorities.

Third, the Order does not specify what "monetary" or "non-monetary" sanctions that it is

considering (other than a potential referral to disciplinary authorities).  The Supreme Court has

made clear that "[e]lementary notions of fairness enshrined in our constitutional jurisprudence

dictate that a person receive fair notice not only of the conduct that will subject him to

punishment, *but also of the severity of the penalty that [the government] may impose*." *State Farm

Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) (emphasis added) (quoting *BMW of N.

Am., Inc., v. Gore*, 517 U.S. 559, 574 (1996)).  Courts have reversed monetary awards issued in

the absence of advance notice about the amount sought.  *See, e.g., In re Kunstler*, 914 F.2d 505,

522 (4th Cir. 1990).  With respect to "non-monetary" relief, the Order does not elaborate on what

sanctions the Bankruptcy Court is considering.  To the extent that the Court is contemplating

some form of injunctive relief, the absence of notice is similarly violative of due process.[4]   *See,

e.g., Cromer v. Kraft Foods North Am. Inc.*, 390 F.3d 812, 819-20 (4th Cir. 2004) (where

---

[4] Of note, the Walker Adversary Complaint did not seek injunctive relief, and did not comport with various
requirements of Fed. R. Civ. P. 65.

magistrate provided party with notice that he faced civil and criminal contempt sanctions, but never indicated that he might impose a prefiling injunction, magistrate failed to afford due process).

### 2. The Order deprives UpRight Law of rights to which it is entitled as a defendant in an adversary proceeding.

In *Fulton v. McVay*, 318 B.R. 546 (D. Colo. 2004), a district court reviewed a bankruptcy court's *sua sponte* issuance of injunction orders against a bankruptcy petition preparer without an adversary complaint having been initiated. According to the district court, the bankruptcy court's conduct raised due process concerns, which the court explained as follows:

> Civil actions, generally, and adversary proceedings, specifically, have certain perquisites. They are commenced by the filing of a complaint, which must be personally served upon the defendant with a summons in order to create personal jurisdiction. Fed.R.Civ.P. 3 & 4; Fed. R. Bank. P. 7003 & 7004. The complaint must set forth a jurisdictional statement, *a short and plain statement of the claim or claims*, *and a demand for judgment*. Fed.R.Civ.P. 8; Fed. R. Bank. P. 7008. The defendant has an opportunity to file an answer or otherwise respond. Fed.R.Civ.P. 12; Fed. R. Bank. P. 7012. The litigants may engage in discovery. Fed.R.Civ.P. 16, 26–36; Fed. R. Bank. P. 7016, 7026–7036. *Typically, the plaintiff bears the burden of proving its claims*; the defendant has the burden of proving any affirmative defenses. At trial, the admission of evidence is subject to the Federal Rules of Evidence. Fed.R.Evid. 101; Fed. R. Bank. P. 9017. *Any time in the process, should the litigants desire, they may compromise claims to their mutual satisfaction*. *The dispute is resolved by a neutral factfinder.*

*Id*. at 553 (emphasis added).  In reversing the bankruptcy court,  the district court in *McVay* found that the bankruptcy court had imposed its own set of procedures that violated the defendant's due process rights by depriving it from a series of rights to which it would have been entitled had an adversary proceeding been implemented against the defendant.

In the instant case, the Order deprives UpRight Law of procedural rights in a manner similar to *McVay*.[5] The procedural rights that the Court's Order violates include:

- No ability to move to dismiss: Under Rule 12, a defendant is entitled to move to dismiss a complaint that fails to provide adequate notice of the claims asserted. (The absence of adequate notice has been addressed above). Here, because the current matter is in a *post-trial* posture, and because there is no complaint, UpRight Law is unable to move to dismiss the matter.

- The Order flips the burden of proof: The Order purports to require UpRight Law to demonstrate how 11 different factual findings comport with more than a dozen authorities, the relevance or application of which are not explained in the Order. As a result, the Order has the effect of attempting to flip the burden of proof.

- The Order deprives UpRight Law of the benefit of the bargain in its settlement, and deprives it of the finality to which it is entitled as a litigant: As the passage above notes, parties are entitled to resolve their disputes by way of resolution. UpRight Law entered into a settlement agreement that resolved all but the Walkers' private § 105 claim, a claim on which UpRight law prevailed. The Order undermines the settlement by effectively raising claims that were not alleged and were released by the settlement and undermines finality by forcing UpRight Law to address issues that were never part of the litigation after it prevailed on the only remaining claim.

- The Order threatens to deprive UpRight Law of a neutral arbiter: A litigant in an adversary proceeding is entitled to a neutral arbiter. *See, e.g. Montgomery v. Uchtman*, 426 F.3d 905, 910 (7th Cir. 2005) ("The Due Process Clause guarantees litigants an impartial judge.") (citing *In re Murchison*, 349 U.S. 133, 136 (1955); *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1075 (9th Cir. 2005) ("A neutral judge is one of the most basic due process protections."); *In re L.T. Ruth Coal Co., Inc.*, 66 B.R. 753, 782 (Bankr. E.D. Ky. 1986) ("bankruptcy court is a passive, impartial arbiter rather than an active participant in controversies that may involve vindication of rights that arise under federal law"). However, because of the manner in which it is structured, the Order threatens to shift the Bankruptcy Court into the role of an active participant.

In short, UpRight Law prevailed in the Adversary Proceeding. The Order, however, now creates a set of obligations that are inconsistent with UpRight Law's status as a defendant in an adversary proceeding, particularly a defendant that has prevailed.

---

[5] The unusual procedural posture of the Order raises the question of whether it is being issued as a part of the adversary proceeding. To the extent that the Order is considered part of the adversary proceeding, it has the effect of denying UpRight Law procedural rights, as it purports to add many new issues to the Adversary Proceeding *after* the trial was completed and after UpRight Law prevailed. To the extent that the Order is not considered to be part of the adversary proceeding, it exists in a procedural posture that is similar to *McVay*.

### 3. To the extent that the Order seeks to impose attorney discipline for alleged violations of the South Carolina Rules of Professional Conduct, it runs afoul of District Court Rule 83.I.08.

The rules that govern disciplinary proceedings in the District of South Carolina are contained in District Court Rule 83.I.08 ("Rules of Disciplinary Enforcement" or "RDE"), Rules IV and V. These rules govern the Bankruptcy Court[6] in addition to the District Court. Alleged violations of the Rules of Professional Conduct are governed by RDE Rule V.[7]

The Order appears to suggest that the Bankruptcy Court is considering the possibility of imposing sanctions upon UpRight Law for nine different Rules of Professional Conduct.[8] Doing so, however, would run afoul of the RDE in several different respects.

- <u>Procedures for the formal initiation of a disciplinary proceeding have not been followed</u>: Rule V (Disciplinary Proceedings) provides that when allegations of misconduct that would warrant discipline come to the attention of a judge, and the procedures are not otherwise established by the District Court rules, "that judge *shall* petition the chief judge of the district court to (1) refer the matter to the appropriate state disciplinary authority for investigation or prosecution or (2) refer the matter to the United States Attorney or other selected counsel for investigation and the prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate." (RDE, Rule V (A)) (emphasis added).

---

[6] The RDE provide in relevant part, "For purposes of these rules, 'this court' includes the bankruptcy division of the District of South Carolina unless otherwise indicated." Rule 83.I.08 (B).

[7] RDE, Rule IV(B) provides:

> Acts or omissions by an attorney admitted to practice before this court, individually or in concert with any other person or persons, that violate the Code of Professional Responsibility adopted by this court shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of any attorney-client relationship. The Code of Professional Responsibility adopted by this court is the South Carolina Rules of Professional Conduct (Rule 407 of the South Carolina Appellate Court Rules) adopted by the South Carolina Supreme Court, as amended from time to time by that state court, except as otherwise provided by specific rule of this court.

[8] One implicit premise of the Order is that UpRight Law can be subject to the South Carolina Rules of Professional Conduct, even though only lawyers (not law firms) are admitted to practice in South Carolina. At least one bankruptcy court declined to impose discipline on the basis that the rules apply only to attorneys, and not law firms. *See In re Bishop*, 578 B.R. 158, 169 (Bankr. W.D.N.Y. 2017). To the extent that the South Carolina Rules of Professional Conduct apply to law firms (and can give rise to discipline), rather than solely to attorneys admitted to practice there, the procedural requirements that govern the imposition of attorney discipline must also apply, as a contrary interpretation would violate the equal protection rights of UpRight Law.

- o The Order, however, does not follow these procedures.  Rather than petitioning the chief judge of the District Court to refer the procedure to the appropriate disciplinary authority, or refer the matter to the appropriate counsel, the Order suggests that the Bankruptcy Court is in the actual process of conducting a disciplinary proceeding.

- <u>A respondent is entitled to a hearing following the issuance of a show cause order before a three-judge panel</u>:  If an order to show cause is issued, after the attorney-respondent responds in writing, the attorney-respondent is entitled to a hearing.  That hearing is conducted before a three-judge panel (at least two of which are district court judges).  Notably, if "the disciplinary proceeding is predicated upon the complaint of a judge of this court, the complaining judge shall not serve on the panel."  RDE, Rule V(E)

  - o UpRight Law has not been afforded a disciplinary hearing, let alone one in front of a three-judge panel free of any judge involved in the issuance of a complaint against it.

- <u>Final determinations in a disciplinary proceeding are made by the bankruptcy court sitting *en banc*</u>:  Following a hearing, the senior judge on the three-judge panel creates a written report for submission that includes a recommendation.  (RDE, Rule V(F)).  The bankruptcy court sitting *en banc* must make a final decision on bankruptcy division matters.

  - o A final determination by the bankruptcy court sitting *en banc* is one of several procedures not contemplated by the Order.

In short, in many respects, the Order fails to adhere to the basic procedural requirements of RDE, Rules IV and V.  Procedurally, the court is not empowered to adjudicate alleged ethical rule violations or to impose sanctions or discipline for those alleged violations, particularly where, as here, the court itself originates the complaint.

Of note, a court is not free to disregard the procedural rules that govern it by merely invoking its inherent authority.  *See, e.g., In re Thalheim,* 853 F.2d 383, 388 (5th Cir. 1988).  For example, in *Thalheim*, a Court of Appeals reversed the imposition of attorney discipline where the district court ignored its own disciplinary procedures.  *Id.* at 390.  In so doing the Court of Appeals noted that a "district court's inherent power to discipline attorneys who practice before it does not absolve the court from the obligation to follow its own rules which it has created in order to implement its exercise of such power."  *Id.* at 388.

Moreover, § 105 does not authorize bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law or constitute a roving commission to do equity. *U.S. v. Sutton,* 786 F.2d 1305, 1308 (5th Cir. 1986). In short, § 105 does not provide the court a basis to ignore the RDE. Accordingly, any consideration of the following South Carolina Rules of Professional Conduct Rule would violate UpRight Law's procedural rights: 1.4 RPC (Communication), 1.5 (Fees), 1.7 (Conflict of Interest: Current Clients), 1.9 (Duties to Former Clients), 1.10 (Imputation of Conflicts of Interest: General Rule), 1.16 (Declining or Terminating Representation), 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers), 5.3 (Responsibilities Regarding Non Lawyer Assistance), and 5.5 (Unauthorized Practice of Law; Multijurisdictional Practice of Law).

## B. The Order erroneously applies 11 U.S.C. § 105 in the absence of a determination of bad faith, and in an expansive manner that runs afoul of the Federal Rules of Civil Procedure and Bankruptcy Procedure.

The Order attempts to use § 105 as a vehicle for requiring UpRight Law to justify its conduct under more than a dozen statutes and rules that were not alleged in the Adversary Complaint. But § 105 cannot serve as a vehicle for such the imposition of potential sanctions or liability, or even justify this form of inquiry.

First, sanctions under §105 may not be imposed in the absence of a determination of bad faith. *In re Royal Manor Management, Inc.,* 525 B.R. 338, 366 (6th Cir. 2015); *In re Chaussee*, 399 B.R. 225, 240-41 (B.A.P. 9th Cir. 2008); *In re Feinberg*, 442 B.R. 215, 225 (Bankr. S.D.N.Y. 2010). Bad faith is something noticeably more egregious than mere negligence or recklessness, *Price v. Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009), and is not poor judgment or a lapse of judgment, *In re Singh*, 2014 WL 842102 *8 (B.A.P. 9th Cir. 2014), or "sloppy and bad form" practice, *In re Pastran*, 462 B.R. 201, 212 (N.D. Tex. 2011). "Monday morning

quarterbacking" is not good grounds for imposing sanctions, and bankruptcy courts should strive to "solve problems." *Id*. at 214.

The Court made no finding that UpRight Law acted in bad faith in Section (D) 1-11, or anywhere else in the Order.  For that reason alone, § 105 does not provide a basis for the imposition of any sanctions or as a predicate to require UpRight Law to respond to a series of different authorities not alleged in the Adversary Complaint.

Second, the Order purports to invoke §105 in a manner that conflicts with governing procedural law.  Section 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code and is subordinate to other valid statutory directives and prohibitions.  *See Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014).  The powers granted by § 105 may be exercised only in a manner consistent with the provisions of the Bankruptcy Code.

The Order, however, purports to invoke §105 as a mechanism to require UpRight Law to "detail . . . any arguments to support the compatibility of the findings in Section 1(d) (Conclusions 1-11)" with, *inter alia*, four bankruptcy statutes, nine Rules of Professional Conduct, and two Rules of Bankruptcy Procedure.  But none of these authorities were alleged in the Adversary Complaint.  Section 105 cannot serve as a vehicle to allow for the introduction of statutes or rules not alleged in the Adversary Complaint (in violation of Rule 8 of the Federal Rules of Civil Procedure and the Rules of Disciplinary Enforcement), particularly at such a severely belated stage of the litigation (post-trial).

### C.  The Order contemplates the imposition of unspecified sanctions that cannot be reconciled with controlling Fourth Circuit authority.

The Order states that "any further action, if found to be appropriate after a review of the Response, may include monetary and non-monetary sanctions, and/or referral of any matters to

South Carolina Office of Disciplinary Counsel and/or the U.S. District Court pursuant to Local

Civ. Rule 83.I.08 (D.S.C.), Rule V." (Doc. 76 at 22-23). However, even apart from the due

process problems associated with not notifying UpRight Law as to the *specific* sanctions being

considered, analysis of these categories of sanctions reveals that they are punitive in nature.

Where the imposition of non-compensatory sanctions is warranted, such sanctions should

be mild and designed solely to coerce compliance with the law. *See Knupfer v. Lindblade (In re*

*Dyer)*, 322 F.3d 1178, 1192-93 (9th Cir. 2003); *see also Adell v. John Richards Homes Bldg.*

*Co., LLC (In re John Richards Homes Bldg. Co.)*, 552 Fed. App'x 401, 415 (6th Cir. 2013) (mild

and prospective sanctions, not punitive); *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1316-17

(11th Cir. 2016) ("Civil penalties must either be compensatory or designed to coerce

compliance.") (quoting *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1280 (11th Cir. 2009) and *In*

*re Dyer, supra*). Such sanctions "'*cannot be any greater than necessary to ensure such*

*compliance and may not be so excessive as to be punitive in nature.*'" *Green Point Credit, LLC*

*v. McClean (In re McLean)*, 794 F.3d 1313, 1323 (11th Cir. 2015) (quoting *In re Jove Eng'g,*

*Inc. v. IRS*, 92 F.3d 1539, 1558 (11th Cir. 1996) (emphasis added).

In *Bradley v. American Household,* 378 F.3d 373 (4th Cir. 2004), the Fourth Circuit

contrasted civil sanctions and punitive/criminal sanctions in the context of a contempt

proceeding. The basic difference between civil and criminal contempt sanctions is that civil

contempt sanctions are intended "to coerce the contemnor into compliance with court orders or

to compensate the complainant for losses sustained," while criminal contempt sanctions are

intended "to vindicate the authority of the court by punishing the contemnor and deterring future

litigants' misconduct...." *Id., citing Buffington v. Baltimore County, Md.*, 913 F.2d 113, 133 (4th

Cir. 1990). Stated another way, civil sanctions are forward-looking, whereas criminal sanctions are intended to punish for past conduct.

In the instant case, the Court has already held that the Walkers are not entitled to any relief. Nor has it identified any conduct in which UpRight Law is currently engaged (or not engaged) that needs to be coerced into compliance with the law. Accordingly, any sanction that the Court might impose would, by definition, be *criminal* in nature. Yet, to significantly understate matters, the Court has not afforded UpRight Law the procedural protections that are required for the imposition of criminal sanctions. These fundamental procedural rights include but are not limited to notice of criminal charges, the right to an independent prosecutor, and evidentiary standard that requires proof beyond a reasonable doubt. *See Bradley*, 378 F.3d at 379. Because any monetary sanction that the Court might impose would constitute a criminal sanction, and because none of the requisite criminal procedural rights were afforded to UpRight Law, the imposition of any monetary sanction would be unlawful and would run afoul of controlling Fourth Circuit precedent.

The Order indicates that it might result in "referral of any matters to South Carolina Office of Disciplinary Counsel and/or the U.S. District Court pursuant to Local Civ. Rule 83.I.08 (D.S.C.), Rule V." But as with all the newly asserted legal issues in the Order, such a referral would be contrary to the terms of the settlement agreement governing this adversary case and would be contrary to the teachings of *Bradley*. *See Bradley*, 378 F.3d at 379 (in rejecting argument that notice to disciplinary boards was appropriate, Court found that such a sanction should not have been imposed in light of the parties' settlement agreement). The settlement agreement between the Walkers and UpRight Law resolved all matters other than the Walkers' assertion of a private §105 claim for their benefit. Just as the settlement in *Bradley* foreclosed

any referral to any disciplinary board, so too does the settlement agreement here. Indeed, the settlement agreement should foreclose the entire set of issues raised by the Order.

### D. The Order contemplates adjudication of issues or claims that are moot.

The Order does not state how the Bankruptcy Court believes that 11 U.S.C. §§ 329 and Fed. R. Bank. Proc. 2017 would apply to Rules 1-11(D) in a manner that would justify the imposition of sanctions or liability. However, because UpRight Law has fully refunded the Walkers (by way of the initial refund, and then later, the settlement that addressed the remainder), any claims/issues that conceivably could arise under those authorities are moot. The only remedy under Section 329 and Rule 2017 would be disgorgement of the attorneys' fees paid by the Walkers, and their fees already have been refunded. Accordingly, any issues under §329 and Rule 2017 are moot. *See, e.g., In re Bradley*, 495 B.R. 747, 792 (S.D. Tex. 2013).

### E. The Order does not comport with the requirements of Rule 9011.

The Order makes reference to Federal Rule of Bankruptcy Procedure Rule 9011, but does not elaborate on its relevance to Paragraphs 1-11(D) or explain why it might give to rise to potential sanctions. Moreover, the Order does not follow the requirements of Rule 9011 and does not appear to be conceivably relevant to UpRight Law in any event. In relevant part, Rule 9011 provides:

> (*b*) *Representations to the Court*. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

15

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.

\*      \*      \*      \*      \*

(B) On Court's Initiative. *On its own initiative, the court may enter an order describing the **specific conduct** that appears to violate subdivision (b)* and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(Fed. R. Civ. P. 9011) (emphasis added). Thus, Rule 9011 provides that a court may on its own initiative enter an order that describes the *specific conduct* that the court believes has given rise a violation of subdivision (b). The Order does not do that; rather, it merely makes passing reference to Rule 9011.

In any event, paragraphs 1-11(D) do not relate to filings that UpRight Law made with the Court. UpRight Law did not file any documents with the Court in furtherance of their representation of the Walkers; the Walkers elected to terminate UpRight Law's representation before they filed their bankruptcy. To the extent the Court has questions about the accuracy of the disclosures in the Walkers' bankruptcy petition, those questions should be directed to Mr. O'Steen, who filed the Walkers' petition.[9]

---

[9] Mr. Walker conceded that he owed more than $230,000 in restitutionary debt (Tr. at 87:12-14), but his petition listed only $2,720 in restitutionary debt. (Ex. J, p. 47 and Tr. at 86:1-10). The Walkers did not disclose the full

## II.   PART TWO

Part two of UpRight Law's submission addresses Paragraphs 1-11(D).  The procedural objections identified above are generally applicable and incorporated by reference herein. The Order speaks in terms of "South Carolina residents" or "clients," without specifically referring to George and Sherry Walker.  For purposes of this Response, UpRight Law understands the Order to be referring specifically to the Walkers and pertain specifically to UpRight Law's representation of the Walkers.   Additionally, the Order is devoid of record citations, thereby compounding the difficulty of responding to these paragraphs.   UpRight Law has proceeded in good faith in attempting to identify the relevant portions of the record in the Walker case to the extent they exist.   UpRight Law further notes that given the absence of notice on the newly raised issues, UpRight Law did not have an opportunity to compile and present complete evidence relevant to *all* issues and potential relief now being considered by the Court.[10]

**1. Upright provided information about bankruptcy relief and the differences between Chapters 7 and 13 to a South Carolina resident through a person that was not a SC attorney, and that resident and his spouse made decisions based on the advice.**

<u>Response</u>:  As a threshold matter, Paragraph 1 is denied to the extent it is intended to equate the provision of basic information regarding bankruptcy relief and the differences between chapters 7 and 13 with the provision of legal advice.  Further, Paragraph 1 is denied to the extent that it is intended to suggest that George and Sherry Walker made a decision to file a Chapter 13 petition

---

amount of restitution as a debt on their bankruptcy petition that was filed By Lee O'Steen. (Tr. at 186:12-17).  The concealment was knowing and purposeful.  Mr. Walker testified that he was aware for the debt and simply chose not to include it in his bankruptcy.  Mr. Walker did not offer any legally justifiable reason for this.  (Tr. at 86:20-25; 87:1-14).  Mrs. Walker testified similarly.  (Tr. at 185:20-25; 186:1-17).  Mr. Walker further testified that he thinks he told Mr. O'Steen about the debt obligations prior to filing, but nevertheless, they were not disclosed.  (Tr. at 115:13-22).

[10] UpRight Law believes there is no factual or legal basis to impose sanctions based on the current record.  This Court should decline to impose sanctions and enter final judgment in favor of UpRight Law.  To the extent, however, that the Court is inclined to impose sanctions, UpRight Law reserves all rights relating to the Order.

based on information provided by UpRight Law representative Iyanna Harris.  Mr. Walker's deposition testimony (admitted into evidence as Exhibit B) indicates that Mr. Walker knew before contacting UpRight Law that he wanted to file a Chapter 13 petition.  (*See* Exhibit B at 46 ("I knew this before – before the beginning that I wanted to try to file a [Chapter 13 bankruptcy] because I knew 7 would be you know, I would basically lose.")  Mr. Walker explained that when he had filed a Chapter 7 bankruptcy earlier in his life that he had been required to surrender assets, and he did not wish to do that.  (*Id.* at 46-47).  Moreover, the Walkers' case file indicated that the Walkers desired to file a Chapter 13 petition but would file a Chapter 7 under certain circumstances.  (Tr. 221:10-222:2; Ex. G at 675).  Put differently, their intake file reflects that they were inclined to file under Chapter 13, but reflects that no final decision had been made.

George Walker consulted with at least two South Carolina licensed attorneys after speaking with Iyanna Harris, and before the Walkers filed their Chapter 13 petition.  The first of these attorneys was Paul Owen, the UpRight Law attorney assigned to his case.  Mr. Walker consulted with Mr. Owen about his bankruptcy, including questions about Chapter 7 and Chapter 13.  (*See* Ex B. at 46:9-17).  The second attorney was Lee O'Steen, who filed the Walkers' Chapter 13 petition on their behalf.  Presumably, Mr. O'Steen advised the Walkers about the merits of filing a Chapter 13 bankruptcy petition.

In short, the facts of this case do not support the statement in Paragraph 1 that Iyanna Harris provided the Walkers legal advice, or the Walkers made a decision to file a Chapter 13 based on this discussion.  To the extent that Ms. Harris provide information about Chapter 7 and

Chapter 13 bankruptcies, there is no prohibition on providing basic information about Chapter 7 or Chapter 13, particularly from a person working under the supervision of attorneys.[11]

Paragraph 1 does not justify the imposition of sanctions against UpRight Law.  UpRight Law does not believe that any of the bankruptcy statutes identified in the Order – 11 U.S.C. §§ 329, 526, 527, or 528, nor Rule 2017 or 9011 – bear any relevance to paragraph 1.   For the reasons explained above, to the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding.   Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.

## 2. A Retainer Agreement, forming an attorney/client relationship, was executed based on conversations with and information provided by a person and/or persons who were not under the control or supervision of a SC attorney.

**Response**:  Paragraph 2 is admitted in part and denied in part.  The retention agreement was sent by UpRight Law attorney Brent Pruim after George Walker spoke with UpRight Law representative Iyanna Harris.   (Tr. 240:16-241:19; Ex. G at 687).  The Walkers signed the agreement on or about June 18, 2018.   (Tr. at 36:5-8; 102:10-22; 189:19-21).   The case was initially assigned to Ric Richardson and was later reassigned to Paul Owen on June 25, 2018. Mr. Owen spoke with George Walker on July 2, 2018. (Tr. at 129:5-131:14; 137:21-25; 51:23-52:8).   To the extent that Paragraph 2 is intended to suggest that an UpRight Law South Carolina partner was not involved in approving and affirming the propriety of the representation, paragraph 2 is denied.   (*See* Tr. 166:13-167:15; Ex. G. at 683).   Furthermore, Paragraph 2 is

---

[11] Paragraph 1 does not allege that non-attorneys are prohibited from providing legal information, and certainly, none of the authorities identified in the Order contain such a prohibition.  To the extent that Paragraph 1 implicitly intends to make such an allegation, it is not true.  There is no general prohibition on the provision of legal information.   Indeed, the US Courts website contains basic information about Chapter 7 and Chapter 13 bankruptcies.  *See*  https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics.  The U.S. Courts' website is one of many sources of legal information about bankruptcy that can be accessed by lawyers, legal assistants, and non-lawyers alike.

denied to the extent that it is intended to suggest that work performed by Iyanna Harris was not subject to the supervision of multiple attorneys, including Paul Owen. The matter was assigned to a South Carolina attorney from the outset. Mr. Richardson, and later Mr. Owen. had the Walkers' intake file at their disposal, which was intended to assist them in their reviews of the file and the compliance call. In the event that either of them had issues with the quality of the intake file, they had the ability to address it with personnel in the firm's central office.

Paragraph 2 does not justify the imposition of sanctions against UpRight Law. For the reasons explained in Part I, imposition of sanctions would violate UpRight Law's procedural rights. UpRight Law does not believe that §§ 329, 526, or 527 (or Rule 2017 and 9011) bear any relevance to paragraph 2. In terms of § 528, UpRight Law initially provided debt relief assistance to the Walkers on June 18, 2018, and it issued an executed agreement within five days of June 18 in compliance with § 528. For the reasons explained above, to the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding. Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.

**3. Upright "signed" the name of a SC attorney to a Retainer Agreement, but that attorney was not involved in the formation of the attorney/client relationship and was never involved in the clients' case.**

**<u>Response</u>:** It is admitted that, pursuant to his partnership agreement which authorized it, UpRight Law affixed the electronic signature Ric Richardson when it issued the retention agreement to the Walkers on June 18, 2018. Further stating, the case was initially assigned to Ric Richardson on June 18, 2018, and was later reassigned to Paul Owen on June 25, 2018. Mr. Owen spoke with George Walker on July 2, 2018. (Tr. at 129:5-131:14; 137:21-25; 51:23-52:8).

20

The retention agreement provided that the Walkers' had engaged UpRight Law and not any particular attorney.  (Ex. A).

UpRight Law denies that Paragraph 3 provides any basis to impose liability or sanctions on UpRight Law.  The Court made no finding of bad faith, and the facts to not support any. Both Mr. Richardson and Mr. Owen testified that they are aware of the firm's procedure and believe that it is ethical.   (131:21-132:7; 139:18-140:15; Tr. 171:6-172:1).   Mr. Galloway testified that UpRight Law has obtained advice from outside ethics counsel that this practice is ethical.  (Tr. 247:15-248:22).  Moreover, paragraph 3 does not identify any bankruptcy statute, rule, or order that UpRight Law violated, and UpRight Law does not believe that this practice violates any bankruptcy statute, including §§ 329, 526, 527, or 528. For the reasons explained above in Part I, to the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding.  Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.

**4. Fees were collected from the clients' bank account before consultation with a SC attorney.**

**Response:**    Paragraph 4 is admitted to the extent that UpRight Law accepted fee payments of $50 and $620 from the Walkers before Mr. Walker consulted with UpRight Law attorney Paul Owen on July 2, 2018.  (*See* Ex. G).  To the extent that Paragraph 4 is intended to suggest that the firm accepted payment without authorization from the Walkers, it is denied.  The Walkers made these payments pursuant to a payment plan that George Walker developed in conjunction with UpRight Law representative Iyanna Harris on June 18, 2018. (*See* Tr. 102:19-103:21; 228:24-230:4; Ex. G).

Paragraph 4 does not justify the imposition of sanctions against UpRight Law.  The Court made no finding of bad faith, and the facts to not support any, and so § 105 cannot serve as a

statutory vehicle to impose sanctions or discipline.   UpRight Law representative Ryan Galloway testified as to the firm's understanding that the law does not impose any prohibition on a debt relief agency accepting payment before the lawyer has consulted with an attorney.  (Tr. 247:4-14).

In fact, there is no prohibition on a debt relief agency's ability to accept payments from a client before the client consults with an attorney.  It would be incongruous to require a debt relief agency to incur compliance obligations for providing debt relief services (as 11 U.S.C. § 528 establishes) before allowing that debt relief agency to accept payment for debt relief services.  Moreover, neither § 528, nor any other bankruptcy code section, prohibit acceptance of payment in advance for services, in sharp contrast with other consumer protection statutes. *See e.g.* Credit Repair Organizations Act, *et seq.*, 15 U.S.C. § 1679b.  If Congress wanted to bar payment in advance of services it would have included a provision in the Bankruptcy Code to do so.  But in reality, it is "common practice" in consumer bankruptcy "of paying counsel compensation in advance to ensure that a bankruptcy filing is in order. *See Lamie v. U.S.* 540 U.S. 526, 528, 124 S. Ct. 1023, 1026, 157 L. Ed. 2d 1024 (2004).  Moreover, given that there are debt relief agencies that possess *no* lawyers, it would be highly problematic for courts to judicially fashion doctrines that prevent certain debt relief agencies from ever being able to accept payment.

Moreover, paragraph 4 does not identify any bankruptcy statute, rule, or order that UpRight Law violated, and UpRight Law does not believe that this practice violates any bankruptcy statute or rule, including §§ 329, 526, 527, or 528. For the reasons explained above in Part I, to the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding.  Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.

**5. No SC attorney spoke with clients for two weeks after the Retainer Agreement was executed, and never spoke to one client subject to the Retainer Agreement.**

<u>Response:</u>  It is admitted that the Walkers executed the Retainer Agreement on or about June 18, 2018, and that Mr. Walker first consulted with an UpRight Law attorney admitted to practice in South Carolina on July 2, 2018.  The Walkers' matter was initially assigned to Ric Richardson on June 18, and then reassigned to Paul Owen on June 25.  Paul Owen consulted with George Walker on July 2, 2018.  (Tr. at 129:5-131:14; 137:21-25; 51:23-52:8).  Mr. Ric Richardson, the South Carolina UpRight Law partner attorney to whom the Walkers' case was first assigned, testified that his inability to call the Walkers before their case was reassigned on June 25, 2018 was not done deliberately or in bad faith.  (Tr. 140:16-20).  Mr. Owen did not act in bad faith in relation to his involvement with the Walkers at any time.  (Tr. at 169:9-11, 21-23).

Moreover, paragraph 5 does not identify any bankruptcy statute, rule, or order that UpRight Law violated, and UpRight Law does not believe that this practice violates any bankruptcy statute or rule, including §§ 329, 526, 527, or 528. For the reasons explained above in Part I, to the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding.  Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.[12]

**6. Upright advised at least one creditor that it represented a client before any SC attorney was consulted or had counseled the clients.**

<u>Response:</u>  It is admitted that UpRight Law informed one of the Walkers' creditors that the firm represented the Walkers before the Walkers had spoken with Mr. Richardson or Mr. Owen.  In terms of the relevant facts, after reviewing the terms of the retainer agreement that UpRight Law

---

[12]Certainly, the passage of two weeks before a South Carolina attorney spoke with the Walkers would not give rise to an ethical violation.  *See, e.g., In re Brown,* 2011 WL 477822, *1-2, *4 (W.D. Mo. Feb. 8, 2011) (no ethical rule violation where debtor signed a retainer agreement on November 7, 2008, and was not given the Missouri-licensed attorney's contact information who represented her until August 21, 2009, a period of more than nine months).

sent to Mr. Walker on June 18, Mr. Walker decided to proceed with UpRight Law.  (Tr. at 102:19-22).  Mr. Walker and his wife reviewed and electronically signed the retainer agreement. (Tr. at 36:5-8; 102:10-22; 189:19-21).  Accordingly, on June 18, 2018, UpRight Law began providing debt relief assistance to the Walkers.

On June 20, 2018, Sherry Walker contacted one of her creditors, Set Financial.  (Tr. at 16:24-17:4).  On June 20, 2018, Sherry Walker informed Set Financial that she would be filing for bankruptcy relief and gave her attorney's contact information for UpRight Law.  (*Id*. at 17:5-13).  On June 20, 2018, Set Financial contacted UpRight Law and verified the representation. (*Id*. at 17:14-20).

Plaintiffs' case was initially assigned to UpRight Law partner Rick Richardson on or about June 18, 2018.  (Tr. at 129:5-131:14). On June 25, 2018, Plaintiffs' bankruptcy matter was reassigned to UpRight Law Partner Paul Owen.  (Tr. 137:21-25; 51:23-52:8).  On or about July 2, 2018, Paul Owen had a telephone call with and conferred with Mr. Walker about the bankruptcy.  (Tr. at 166:12-13).

Paragraph 6 does not justify the imposition of sanctions against UpRight Law.  UpRight Law does not believe that any of the bankruptcy statutes identified in the Order – 11 U.S.C. §§ 329, 526, 527, nor Rule 2017 or 9011 – bear any relevance to paragraph 6.  As for § 528, under that statute, debt relief services were provided on June 18, 2018, and the Walkers' engaged the firm on that date, so it is wholly unclear why a debt relief agency could not notify a creditor that it represented the client as of June 20.  For the reasons explained above, to the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding.  Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.

**7. Upon termination of the attorney/client relationship, the clients were billed by Upright for tasks performed by non-attorney staff, tasks that appear unnecessary, tasks that did not actually occur, that were for clerical purposes such as billing and reassigning cases, and for duplicate time entries.**

**<u>Response</u>:**  Factually, UpRight Law admits Paragraph 7 in part and denies it in part, and notes that Paragraph 7 omits relevant facts.  UpRight Law admits that the Walkers elected to terminate the representation in August 2018, and that UpRight Law provided an accounting of services on August 22, 2018.  Paragraph 7 does not specify which time entries "appear unnecessary" (or to whom they "appear unnecessary"), nor does it specify which time entries were duplicates. The Walkers did not identify any particular entries that they believed were inappropriate or duplicative before rushing to file their adversary complaint.

To the extent that Paragraph 7 is intended to suggest that the firm was not permitted to bill for services rendered when the Walkers cancelled, Paragraph 7 is denied.[13]  At the outset of the representation, Mr. Walker was advised that "all work performed, including work performed in building your case today, is considered bankruptcy-assistance provided on your behalf. Should you later decide to cancel, you'll be billed for all services, including the services the firm has already provided."  (Tr. at 105:12-18).  Further the retention agreement that the Walkers executed provided that in the event that they cancelled the representation, they would be charged for services rendered.  (Ex. A).

The accounting that UpRight Law provided to the Walkers reflected that the firm had earned $776.50, but the firm only billed the Walkers $526.50, and thereby increased the Walkers' refund by $250.  (Tr. 266:22 – 267:8).  Paragraph 7 does not constitute a basis for the

---

[13] UpRight Law also denies Paragraph 7 to the extent it is intended to suggest that there are categorical prohibitions on a law firm's ability to charge for the work of non-attorneys, or for tasks that might be deemed "administrative" or "clerical."  *See* FINAL REPORT OF THE ABI COMMISSION ON CONSUMER BANKRUPTCY (2017-2019), Sec. § 3.01 at 90 (law firm is entitled to compensation for legal and administrative services were provided in event of termination before the filing of a bankruptcy petition).

imposition of sanctions or liability.  UpRight Law does not believe that any of the bankruptcy statutes identified in the Order – 11 U.S.C. §§  526, 527, or 528, nor 9011 – bear any relevance to paragraph 7.  To the extent § 329 and/or Rule 2017 apply in this context, any claims under those provisions have been released by the settlement and are moot.  To the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding.  Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.

**8. Upright did not promptly refund amounts to the clients upon termination of the attorney/client relationship.**

**<u>Response</u>:**  Paragraph 8 is denied.  When UpRight Law issued the refund of $763.50 to the Walkers on October 8, it issued more than the amount due to the Walkers *before* the Walkers filed their adversary complaint. UpRight Law provided this refund on October 8, 2018.  The Walkers filed the instant Adversary Complaint (without advance notice) on October 10, 2018.  (Tr. at 112:21-113:25; 114:14-16).  To the extent that Paragraph 8 is intended to suggest that UpRight Law was dilatory in its issuance of the $527 that it paid pursuant to the *settlement agreement*, that is not correct.  The settlement agreement occurred on terms in which neither party admitted liability.  (*See* Doc 32).  As UpRight Law noted in its post-trial brief, settlements are common in civil litigation, and the fact that UpRight Law attempted to use settlement to reduce the scope of this case (and its attendant litigation costs) is *not* a legitimate basis to impose liability or sanctions.  *See, e.g., Bradley v. American Household Inc.,* 378 F.3d 373, 379 (4th Cir. 2004) (sanctions not appropriate in light of settlement agreement).

Paragraph 8 does not constitute a basis for the imposition of sanctions or liability.  UpRight Law does not believe that any of the bankruptcy statutes identified in the Order – 11 U.S.C. §§  526, 527, or 528, nor 9011 – bear any relevance to paragraph 8.  To the extent § 329

and/or Rule 2017 apply in this context, any claims under those provisions have been released by

the settlement and are moot.  To the extent that the Rules of Professional Conduct apply to law

firms, this court lacks the authority to conduct a disciplinary proceeding.  Moreover, on the

merits, UpRight Law did not violate any of these statutes or rules.  Of note, Rule 1.16 does not

specify a time period in which a refund needs to be issued, and the time period that elapsed

between cancellation and issuance of the unearned was reasonable and not related to the

existence of litigation.

**9. An adversary proceeding and the jurisdiction of this Court were required before Upright
issued a refund to clients of all amounts due.**

**<u>Response</u>:**  Paragraph 9 is denied.  UpRight Law issued the $763.50 refund to the Walkers

*before* the Walkers filed their adversary complaint.  UpRight Law provided this refund on

October 8, 2018.  The Walkers filed the instant Adversary Complaint (without advance notice)

on October 10, 2018.  (Tr. at 112:21-113:25; 114:14-16).  Accordingly, an adversary proceeding

was *not* required before UpRight Law issued a refund to the Walkers of all amounts that were

due.  To the extent that Paragraph 9 is intended to suggest that the $527 paid by UpRight Law to

the Walkers under the parties' *settlement* agreement establishes that this money was "owed" to

the Walkers, it is plainly mistaken.  The settlement agreement occurred on terms in which neither

party admitted liability.  (*See* Doc 32).  As UpRight Law noted in its post-trial brief, settlements

are common in civil litigation, and the fact that UpRight Law attempted to use settlement to

reduce the scope of this case (and its attendant litigation costs) is *not* a legitimate basis to impose

liability or sanctions.  *See, e.g., Bradley v. American Household Inc.,* 378 F.3d 373, 379 (4th Cir.

2004) (sanctions not appropriate in light of settlement agreement).

Paragraph 9 does not constitute a basis for the imposition of sanctions or liability.

UpRight Law does not believe that any of the bankruptcy statutes identified in the Order – 11

U.S.C. §§ 526, 527, or 528, nor 9011 – bear any relevance to paragraph 9. To the extent § 329 and/or Rule 2017 apply in this context, any claims under those provisions have been released by the settlement and are moot. To the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding. Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.

**10. To receive the refund, clients had to agree to releases and to be responsible for their attorney's fees and costs incurred in the pursuit of that refund.**

**<u>Response</u>:** Paragraph 10 is denied. As noted above (and in UpRight Law's post-trial brief), UpRight Law issued the $763.50 refund due to the Walkers *before* the Walkers rushed to file their adversary complaint (without notifying UpRight of their intent to do so). When UpRight Law issued the $763.50 refund to the Walkers on October 8, 2018, the firm did not require (or even suggest) that the Walkers would need to sign any form of release. To the extent that Paragraph 10 is intended to suggest that the $527 paid by UpRight Law to the Walkers pursuant to the parties' *settlement agreement* establishes that this money was "owed" to the Walkers, it is plainly mistaken. The settlement agreement occurred on terms in which neither party admitted liability. (*See* Doc 32). As UpRight Law noted in its post-trial brief, settlements are common in civil litigation, and the fact that UpRight Law attempted to use settlement to reduce the scope of this case (and its attendant litigation costs) is *not* a legitimate basis to impose liability. *See, e.g., Bradley v. American Household Inc.,* 378 F.3d 373, 379 (4th Cir. 2004) (sanctions not appropriate in light of settlement agreement).

Paragraph 10 does not constitute a basis for the imposition of sanctions or liability. UpRight Law does not believe that any of the bankruptcy statutes identified in the Order – 11 U.S.C. §§ 526, 527, or 528, nor 9011 – bear any relevance to paragraph 10. To the extent § 329 and/or Rule 2017 apply in this context, any claims under those provisions have been released by

Case 18-80075-hb    Doc 78    Filed 04/10/20    Entered 04/10/20 13:49:20    Desc Main
Document      Page 29 of 30

the settlement and are moot. To the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding. Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.

**11. Adequate procedures are not in place to ensure Upright and its local partners are free from conflicts of interest, including whether any conflicts exist among the local partners or between Upright and local partners not assigned to the client in question.**

<u>Response</u>: Paragraph 11 is denied. Neither UpRight Law, nor its local attorneys, possessed any conflict of interest in the representation of George and Sherry Walker, and Paragraph 11 does not allege that such a conflict existed in this case. Moreover, the record established that as of December 2019, UpRight Law had filed more than 45,000 petitions nationally since 2014.[14] (Tr. 249:22 – 250:2). There was no evidence presented that UpRight Law has ever been found to have represented a client for which it (or its partners) possessed a conflict of interest.

Paragraph 11 does not constitute a basis for the imposition of sanctions or liability. UpRight Law does not believe that any of the bankruptcy statutes identified in the Order – 11 U.S.C. §§ 329, 526, 527, or 528, nor 9011 or 2017. To the extent that the Rules of Professional Conduct apply to law firms, this court lacks the authority to conduct a disciplinary proceeding. Moreover, on the merits, UpRight Law did not violate any of these statutes or rules.

---

[14] Mr. Galloway also testified that the firm had filed 865 bankruptcy petitions in South Carolina. (*See* Tr. 250:5-7). To the extent that the Court construed that figure to be the number of bankruptcy petitions filed by UpRight Law in 2019, that is not correct. That number corresponded to the number of petitions filed since 2014.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should decline to impose any form of sanctions or

liability on UpRight Law.  The Court should enter final judgment in favor of UpRight Law.

Respectfully Submitted,

/s/A. Todd Darwin
A. Todd Darwin, District Court I.D. No.: 6382
Holcombe Bomar, P.A.
P.O. Box 1897
Spartanburg, SC 29304
Telephone: (864) 594-5300
Email: tdarwin@holcombebomar.com